JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Appellant Erin O'Brien appeals the trial court's judgment enforcing the settlement agreement with Kathi and Larry Meluch and the trial court's granting of summary judgment in favor of the Meluchs on O'Brien's counterclaims. She assigns five errors for our review.[1]
 {¶ 2} Having reviewed the record and pertinent law, we dismiss O'Brien's appeal concerning the trial court's enforcement of the settlement agreement and reverse and remand in part and affirm in part the trial court's decision to grant summary judgment in favor of the Meluchs on O'Brien's counterclaims. The apposite facts follow.
 Background {¶ 3} This case originates from an automobile accident between Kathi Meluch and Erin O'Brien near Columbia and Bagley Roads in Olmsted Falls, Ohio. O'Brien was at a gas station located on the corner of the intersection. She exited by pulling in front of a stopped car and then proceeded to drive into the left hand turn lane, colliding with Kathi Meluch's vehicle, which was traveling forward into the left turn lane.
 {¶ 4} At the time of the accident, Kathi Meluch's husband, Larry Meluch, who is a sergeant for the Olmsted police department, was driving a police vehicle near *Page 4 
the intersection of the accident. He witnessed the accident and responded to the scene. He called an ambulance for O'Brien and his wife. Because his wife was also involved in the accident, he requested that another officer be dispatched to handle the completion of the accident report. O'Brien was cited for failure to yield from a private driveway under the Olmsted Falls motor vehicle code.[2]
 {¶ 5} Kathi and Larry Meluch filed a complaint against O'Brien alleging O'Brien negligently caused her vehicle to collide with Meluch's resulting in personal injuries to Kathi Meluch and loss of consortium to her husband. O'Brien counterclaimed against Kathi Meluch for negligence, denying damages and liability. In addition, she alleged claims for spoilation of evidence, malicious prosecution, aiding and abetting spoilation of evidence, and civil conspiracy against the Meluchs. These claims arose out of the Meluchs' personal relationship with the employees of the Olmsted Falls police department. The counterclaims were brought by O'Brien's private attorney, William Wuliger, not her insurer's attorney.
 {¶ 6} Although O'Brien's counterclaims were pending, her insurer, Grange Insurance, sought to settle the Meluchs' claims. O'Brien's attorney, William Wuliger, threatened to sue Grange for bad faith if settlement with the Meluchs proved detrimental to the counterclaims he brought on O'Brien's behalf. *Page 5 
 {¶ 7} After attending a private mediation, the Meluchs and Grange Insurance agreed to settle the Meluchs' claims for $75,000 in exchange for a release. The language contained within the release is disputed. The Meluchs' attorney contends attorney Wuliger, who was upset at Grange's attempts to settle the case, submitted a release to protect O'Brien's counterclaims. The Meluchs refused to sign Wuliger's release. The Meluchs contend Grange agreed the release was excessive and agreed to submit a standard release along with the check. The Grange attorney contends that although she was aware the Meluchs refused to sign the release, she did not offer to submit a standard release. The Meluchs filed a motion to enforce the settlement and a hearing was conducted.
 {¶ 8} At the hearing, the Meluchs and their attorney contended Grange agreed to submit a release with standard language, while the Grange attorney continued to contend she never agreed to submit a standard release. The trial court concluded a standard release was agreed to and granted the motion to enforce the settlement.
 {¶ 9} Subsequently, the Meluchs filed a motion for summary judgment on O'Brien's counterclaims. The trial court granted the Meluchs' motion for summary judgment.
 Motion to Enforce Settlement *Page 6 {¶ 10} In her first assigned error, O'Brien contends the trial court erred by enforcing the settlement agreement. We conclude we do not have jurisdiction to consider this assigned error.
 {¶ 11} App.R. 3(D) provides that "[t]he notice of appeal * * * shall designate the judgment, order or part thereof appealed from." Although O'Brien filed a timely notice of appeal from the trial court's granting of summary judgment in favor of the Meluchs on her counterclaims, O'Brien failed to file a notice of appeal from the trial court's enforcement of the settlement agreement until four months after the time for appeal had expired. Because the original notice of appeal does not mention the trial court's order enforcing the settlement agreement, this court is without jurisdiction to consider an additional order not timely appealed.[3]
 {¶ 12} O'Brien argues that App.R. 3(D) is not mandatory and that the court can amend the notice of appeal where justice requires. The Supreme Court in Maritime Manufacturers, Inc. v. Hi-Skipper Marina[4], held that an appellate court possessed jurisdiction to hear an appeal even though the "notice of appeal mistakenly specified that the appeal was taken from the order denying the motion for a new trial rather *Page 7 
than from the final judgment entered on the merits."[5] The instant case, however, is distinguishable from Maritime. In Maritime the order denying the motion for a new trial was in fact connected to the final judgment which was entered on the merits at trial. In the instant case, the order enforcing settlement was clearly independent of the trial court's granting of summary judgment on O'Brien's counterclaims.[6]
 {¶ 13} Similarly, in Parks v. Baltimore Ohio Railroad, the appellant filed a notice of appeal regarding an order for sanctions. The appellant later attempted to amend the notice to include an appeal of the denial of the motion to vacate and/or for a new trial. We held the orders were separate orders and the appeal of one did not put the appellee on notice that the other was also being appealed. Likewise, in the instant case, O'Brien's appeal from the summary judgment orders did not put the Meluchs on notice that she also intended to appeal the enforcement of the settlement agreement.
 {¶ 14} O'Brien also contends that the time to appeal the enforcement of the settlement agreement was tolled because she filed a motion for clarification concerning whether the trial court's granting of summary judgment in favor of the Meluchs also included O'Brien's personal injury claim. However, a motion for clarification of a final order does not affect the time requirements for the filing of a *Page 8 
notice of appeal.[7] Motions to clarify are, in effect, motions to reconsider which are a nullity under the Civil Rules from which no appeal may be taken.[8]
 {¶ 15} Moreover, O'Brien did file a timely notice of appeal on November 14, 2006 from the trial court's granting of the motions for summary judgment. Additionally, her motion for clarification addressed the finality of the trial court's summary judgment rulings, not the order enforcing the settlement. Thus, in order to have properly invoked our jurisdiction regarding the trial court's order enforcing the settlement, O'Brien should have appealed the judgment at the same time she appealed the summary judgment rulings. Accordingly, because we do not have jurisdiction over appeals filed beyond the thirty day time for filing, O'Brien's first assigned error is dismissed.
 Motion for Summary Judgment {¶ 16} In O'Brien's remaining assigned errors, she contends the trial court erred by granting summary judgment on her counterclaims in favor of the Meluchs.
 {¶ 17} We review an appeal from summary judgment under a de novo standard of review.[9] Accordingly, we afford no deference to the trial court's decision *Page 9 
and independently review the record to determine whether summary judgment is appropriate.[10] Under Civ.R. 56, summary judgment is appropriate when: (1) no genuine issue as to any material fact exists, (2) the party moving for summary judgment is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can reach only one conclusion which is adverse to the nonmoving party.[11]
 {¶ 18} The moving party carries an initial burden of setting forth specific facts which demonstrate his or her entitlement to summary judgment.[12] If the movant fails to meet this burden, summary judgment is not appropriate; if the movant does meet this burden, summary judgment will be appropriate only if the non-movant fails to establish the existence of a genuine issue of material fact.[13]
 Personal Injury Claim {¶ 19} In her second assigned error, O'Brien contends the trial court erred by granting summary judgment on her counterclaim for personal injury against Kathi Meluch. We agree. *Page 10 
 {¶ 20} O'Brien contends that Meluch did not have the right away because she unlawfully crossed over the double lines before entering the left turn lane and was speeding. In support of this argument, O'Brien submitted an affidavit by her accident reconstruction expert, Wilbur R. Meredith, III, in which he concluded Kathi Meluch was the proximate cause of the accident because she was speeding and traveling on the wrong side of the road.
 {¶ 21} O'Brien also submitted Meredith's expert testimony from O'Brien's traffic court trial, in which Meredith testified that he calculated Kathi Meluch's speed using two different methods to conclude she was speeding prior to and at the point of impact. He also concluded she was left of the double lines as she drove forward. In forming these opinions, Meredith took photographs and measurements of the accident site, inspected the damage to the cars, reviewed the crash report, and examined the Speedway video and resulting single-frame captured images.
 {¶ 22} The Meluchs failed to rebut this scientific evidence that concluded Kathi Meluch was the cause of the accident. The only evidence presented by Meluch was her self-serving affidavit that she was driving at a lawful speed and did not cross the double yellow line prior to the collision. Therefore, a material fact was in dispute that barred summary judgment on this issue. Accordingly, O'Brien's second assigned error is sustained.
 Spoilation of Evidence *Page 11 {¶ 23} In her third assigned error, O'Brien contends the trial court erred by granting summary judgment in favor of the Meluchs on her counterclaim for spoilation of evidence. We disagree.
 {¶ 24} To overcome a properly supported summary judgment motion relating to a claim for spoilation or destruction of evidence, a plaintiff must establish that a genuine issue of material fact exists as to each of the following:
 "(1) pending or probable litigation involving the plaintiff, (2) knowledge on the part of defendant that litigation exists or is probable, (3) willful destruction of evidence by defendant designed to disrupt the plaintiffs case, (4) disruption of the plaintiff's case, and (5) damages proximately caused by the defendant's acts[.]"[14]
 {¶ 25} The term "willful," as used in "willful destruction of evidence by defendant designed to disrupt the plaintiff's case," "necessarily contemplates more than mere negligence or failure to conform to standards of practice, but instead anticipates an intentional, wrongful act."[15] In Drawl, the court explained the term "willful" as follows:
 "The term `willful' * * * includes the following: `Premeditated; malicious; done with evil intent, or with a bad motive or purpose * * *. An act * * * is `willfully' done, if done voluntarily and intentionally and with the specific intent to do something the law forbids * * *; that is to say, with bad purpose * * *.'"[16] *Page 12 
 {¶ 26} In the instant case, we agree with the trial court's conclusion that no genuine issues of material fact remain as to whether the Meluchs willfully destroyed evidence in an attempt to disrupt O'Brien's case.
 {¶ 27} O'Brian contends that Mrs. Meluch committed spoilation by failing to locate and identify potential witnesses and by failing to state her speed and exact location of her vehicle at the time of the collision in her accident report. However, as the other party to the accident, Kathi Meluch did not have a duty to locate witnesses on O'Brien's behalf. Mrs. Meluch also did not have a duty to make a statement containing the details of the accident, as such reports are voluntary. Moreover, evidence of the speed and location of the car is not destroyed because it can be obtained via deposition. No evidence was presented indicating that Meluch willfully interfered with O'Brien's access to evidence or willfully concealed evidence. Therefore, summary judgment as to O'Brien's spoilation claim against Kathi Meluch was properly granted.
 {¶ 28} O'Brien also contends that Larry Meluch, as an Olmsted Falls police sergeant and witness, committed spoilation of evidence. She specifically argues that Larry Meluch failed to preserve the scene of the accident. She claims that Larry Meluch failed to take down information from witnesses and did not completely investigate the scene. While officers have a duty to "preserve the peace, protect *Page 13 
persons and property, and obey and enforce all laws and ordinances," they do not have a duty to search out or collect exculpatory evidence.[17]
 {¶ 29} Additionally, Larry Meluch testified that because his wife was involved in the accident, it would have been improper for him to have conducted the accident investigation. He, therefore, focused on obtaining medical aid for his wife and O'Brien and directing traffic around the accident. The officer who was called to the scene testified that based on the position of the cars and location of the damages to the vehicles, he concluded O'Brien was at fault. However, because an officer's wife was involved in the accident, he referred the matter to the prosecutor to determine whether O'Brien should be cited.
 {¶ 30} Moreover, a spoilation of evidence claim requires the purpose of the conduct at issue was to impede pending or probable litigation. At the time of the accident, it was too early for litigation to be contemplated. In fact, the Meluchs did not file suit until a year after the accident. Accordingly, Meluchs' third assigned error is overruled.
 Malicious Prosecution {¶ 31} In her fourth assigned error, O'Brien argues the trial court erred by granting summary judgment in favor of the Meluchs on her malicious prosecution claim. We disagree. *Page 14 
 {¶ 32} The Ohio Supreme Court in Froehlich v. Ohio Dept. of MentalHealth,[18] recently set forth the elements to establish a successful malicious prosecution case as follows:
 "The tort of malicious prosecution in a criminal setting requires proof of three essential elements: `(1) malice in instituting or continuing the prosecution, (2) lack of probable cause, and (3) termination of the prosecution in favor of the accused.'"[19]
 {¶ 33} Detrimental to O'Brien's malicious prosecution claim is the fact that Kathi and Larry Meluch did not make the decision to institute proceedings to prosecute O'Brien in traffic court. The City Prosecutor, Bradley Burland, testified it was his decision to prosecute O'Brien for the traffic offense. A prosecutor's involvement in the decision to prosecute insulates the Meluchs from civil liability for criminal prosecution.[20] Although O'Brien contends Kathi Meluch badgered the prosecutor to pursue charges against O'Brien, the evidence does not indicate this. Even if she did, the ultimate decision was for the prosecutor to make.
 {¶ 34} Moreover, the determinative issue is not whether a particular crime was actually committed, but whether there was a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused was guilty of the offense with which he or *Page 15 
she was charged.[21] In the instant case, O'Brien was charged for failing to yield from a private drive, in violation of Olmsted Falls Ordinance 432.21. It is undisputed that O'Brien entered a roadway from the gas station driveway and collided with Kathi Meluch. Therefore, there was a reasonable ground of suspicion that O'Brien violated the traffic laws. Accordingly, O'Brien's fourth assigned error is overruled.
 Aiding and Abetting/Civil Conspiracy {¶ 35} In her fifth assigned error, O'Brien contends the trial court erred by granting summary judgment in favor of the Meluchs on her claim for aiding and abetting and civil conspiracy claims. We disagree.
 {¶ 36} In Ohio, in order to establish the tort of civil conspiracy, the following elements must be proven: (1) a malicious combination of two or more persons, (2) causing injury to another person or property, and (3) the existence of an unlawful act independent from the conspiracy itself.[22] An action for civil conspiracy cannot be maintained unless an underlying unlawful act is committed.[23]
 {¶ 37} In the instant case, there is no evidence of an underlying unlawful act that would support O'Brien's conspiracy claim. O'Brien was cited for a traffic offense, which pursuant to the evidence, there was reasonable grounds for the *Page 16 
citation. Because O'Brien has failed to establish this necessary factual element of an underlying unlawful act, her civil conspiracy claim fails; therefore, summary judgment was properly entered in the Meluchs' favor.
 {¶ 38} O'Brien also alleges that the Meluchs aided and abetted the Olmsted Falls police department in the commission of malicious prosecution and spoilation of evidence. However, as we stated in the above assigned errors, there was no evidence to support these underlying claims. Therefore, summary judgment was properly entered in favor of the Meluchs' on O'Brien's aiding and abetting claims. Accordingly, O'Brien's fifth assigned error is overruled.
Appeal dismissed in part, reversed and remanded in part, and affirmed in part.
It is ordered that appellant and appellee share the costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
SEAN C. GALLAGHER, P.J., and ANTHONY O. CALABRESE, JR., J., CONCUR.
 APPENDIX *Page 17 Assignments of Error
"I. The trial court erred in granting the Meluchs' motion to enforce an extra-judicial oral settlement agreement, the material terms and/or existence of which were in dispute."
"II. The trial court erred in granting summary judgment in favor of Kathi Meluch on Erin O'Brien's counterclaim for personal injuries suffered as a result of the accident despite a genuine dispute of material fact regarding liability therefor."
"III. The trial court erred in granting summary judgment in favor of the Meluchs on Erin O' Brien's counterclaim for spoilation, despite a genuine dispute of material fact regarding the Meluchs' willful interference with her claim."
"IV. The trial court erred in granting summary judgment in favor the Meluchs on Erin O'Brien's counterclaim alleging malicious prosecution, despite a genuine dispute of material fact regarding the existence of probable cause."
"V. The trial court erred in granting summary judgment in favor of the Meluchs on Erin O'Brien's counterclaims alleging aiding and abetting and civil conspiracy, despite genuine disputes of material fact regarding the existence of an underlying tortious act."
[1] See appendix.
[2] The matter proceeded to the Berea Municipal Court where O'Brien was found guilty. She subsequently appealed to this court. We vacated her conviction based on the fact the Mayor's Court failed to properly certify the matter to the Berea Municipal Court. See, City of OlmstedFalls v. O'Brien, Cuyahoga App. No. 84926, 2005-Ohio-1317.
[3] Parks v. Baltimore Ohio Railroad (1991), 77 Ohio App.3d 426,428; Schloss v. McGinness (1984), 16 Ohio App.3d 96, 97-98; Carey v.Carey (1983), 9 Ohio App.3d 243, 246; Baur v. Co-Ax Technology,Inc., Cuyahoga App. No. 88692, 2007-Ohio-3910 at FN 3; In re: P.M., Cuyahoga App. No. 87671, 2006-Ohio-5917; Bellecourt v. City ofCleveland, 152 Ohio App.3d 687, 2003-Ohio-2468; Brady v. Benzing, Cuyahoga App. No. 81894, 2003-Ohio-3354. (1982),70 Ohio St. 2d 257.
[4] (1982), 70 Ohio St. 2d 257.
[5] Id. at 258.
[6] See, also, Ode v. Ludedtke Engineering Co. (Aug. 21, 1997), Cuyahoga App. No. 71473.
[7] State v. Bassham, 94 Ohio St.3d 269, syllabus, 2002-Ohio-797.
[8] Ditmars v. Ditmars (1984), 16 Ohio App.3d 174; In the matter of:The Estate of Marion R. Lilley, 12th Dist. Nos. CA99-07-083, CA99-07-084, CA99-08-087, CA99-08-088.
[9] Baiko v. Mays (2000), 140 Ohio App.3d 1, citing Smiddy v. TheWedding Party, Inc. (1987), 30 Ohio St.3d 35; Northeast Ohio Apt. Assn.v. Cuyahoga Cty. Bd. of Commrs. (1997), 121 Ohio App.3d 188.
[10] Id. at 192, citing Brown v. Scioto Bd. of Commrs. (1993),87 Ohio App.3d 704.
[11] Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327.
[12] Dresher v. Burt, 75 Ohio St.3d 280, 292-293, 1996-Ohio-107.
[13] Id. at 293.
[14] Smith v. Howard Johnson Co., Inc., 67 Ohio St.3d 28, 29,1993-Ohio-229.
[15] White v. Ford Motor Co. (2001), 142 Ohio App.3d 384, 387-88, citing Drawl v. Cornicelli (1997), 124 Ohio App.3d 562.
[16] Drawl, supra at 567 (quoting Black's Law Dictionary (6 Ed.1990) 1599).
[17] City of Cleveland v. Brown, Cuyahoga App. No. 80112, 2002-Ohio-2139.
[18] 114 Ohio St.3d 286, 2007-Ohio-4161.
[19] Id. at ¶ 10, citing Trussell v. Gen. Motors Corp. (1990), 53 Ohio St.3d 142,146.
[20] Baryak v. Kirkland (2000), 137 Ohio App.3d 704; Robbins v.Fry (1991), 72 Ohio App.3d 360, 362-363; Archer v. Cachat (1956),165 Ohio St. 286.
[21] McFinley v. Bethesda Oak Hospital (1992), 79 Ohio App.3d 613,617.
[22] Kenty v. TransAmerican Premium Ins. Co. (1995),72 Ohio St.3d 315, 319. See, also, Williams v. Aetna Financial Co. (1998),83 Ohio St.3d 464; Geo-Pro Services, Inc. v. Solar Testing Laboratories,Inc. (2001), 145 Ohio App.3d 514, 527.
[23] Gosden v. Louis (1996), 116 Ohio App.3d 195. *Page 1